# In the United States Court of Federal Claims

|  |  |
|---|---|
| GUILLERMO A. MONTERO,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 22-cv-484<br><br>Filed: August 26, 2022 |

*Guillermo A. Montero*, Beverly Hills, California, Plaintiff, appearing *pro se*.

*Reta E. Bezak*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., appearing for Defendant.

### MEMORANDUM AND ORDER

On April 29, 2022, Plaintiff Guillermo A. Montero, appearing *pro se*, filed a Complaint in this Court. *See* Complaint (ECF No. 1) (Compl.). While Plaintiff's claims are not entirely clear, the Court understands Plaintiff's Complaint to allege that Defendant United States is taking his property without just compensation, in violation of his rights under the Fifth Amendment to the Constitution.[1] Compl. at 1. Specifically, Plaintiff complains that "[t]he government took a

---

[1] Plaintiff's Complaint is unclear concerning whether he asserts Defendant performed the allegedly unconstitutional taking when it seized bank accounts and real property and commenced the forfeiture action, or whether he asserts a federal district court performed the allegedly unconstitutional taking when it struck Plaintiff's claims to the bank accounts and real property. The distinction is irrelevant for this Motion; and in any event, Plaintiff clarified in his Opposition to Defendant's Motion to Dismiss (ECF No. 12) (Opp.) that "[t]he [district court's] strike of Plaintiff's claims objecting to the forfeiture of the two (2) California defendant real property assets is irrelevant at this point and was only the predicate offense upon which the complaint is based." Opp. at 1. The Court therefore understands Plaintiff to plead that Defendant, not the district court, committed the alleged taking.

property interest from the Guillermo Montero for a public purpose in case number 1:21-cv-20614RNS, United States of America v. Approximately $3,275.20 Seized from Bank of America Account # *XXXXXXXXXX* et al." *Id.* at 1 (alternation of bank account number added). Plaintiff seeks a $20,000,000 judgment against the United States "for the value of [his] mechanics liens, mortgage payments, insurance payments, real property taxes, and lost profits as a result of the impending forfeiture of the three (3) Defendant real property assets and loss of income as a result of [the Defendant's] interference with [his] contracts with Santilli's." *Id.* at 3.[2]

Pending before the Court is Defendant's Motion to Dismiss *Pro Se* Complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (Rule(s) or RCFC). *See* Defendant's Motion to Dismiss (ECF No. 8) (Mot.). Defendant offers several reasons this Court does not have subject matter jurisdiction over Plaintiff's takings claim. Mot. at 1. This Court agrees with Defendant that the United States Court of Federal Claims does not have subject matter jurisdiction over this action. Accordingly, for the reasons discussed in greater detail below, Defendant's Motion to Dismiss is **GRANTED** pursuant to Rules 12(b)(1) and 12(h)(3).

BACKGROUND

I. Civil Asset Forfeiture Litigation in the Southern District of Florida

In February 2021, the United States initiated a civil action for forfeiture *in rem* in the United States District Court for the Southern District of Florida (Forfeiture Litigation). *See* Complaint, *United States v. Approximately $3,275.20 Seized from Bank of America Account No. XXXXXXXXXX*, No. 1:21-cv-20614-RNS (S.D. Fla. Feb. 12, 2021), ECF No. 1. The federal government had seized bank accounts and real property allegedly linked to violations of foreign law, including violations of the Venezuelan Anticorruption Law, and had commenced forfeiture

---

[2] Citations to Plaintiff's Complaint reference the ECF page numbers.

2

proceedings pursuant to "Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Federal Rules of Civil Procedure, and 18 U.S.C. § 985, to forfeit assets that constitute proceeds of foreign bribery offenses, property involved in money laundering or a conspiracy to commit money laundering, and/or property traceable to such property." *Id.* ¶ 1; *see generally id.* ¶¶ 1-78.

Plaintiff submitted several verified claims to the district court, asserting an ownership interest in certain assets at issue in the Forfeiture Litigation. *See United States v. Approximately $3,275.20 Seized from Bank of America Account No. XXXXXXXXXX*, No. 21-20614-Civ-Scola, 2022 WL 19328, at *1 (S.D. Fla. Jan. 3, 2022). As part of those claims, Plaintiff asserted an ownership interest in funds contained in two seized bank accounts. *Id.* at *2. He also claimed an ownership interest in proceeds from the sale of three parcels of real property: "(1) 1270 99 Street, Bay Harbor Island, Florida, (2) 2377 Glendon Ave., Los Angeles, California, and (3) 10421 Northvale Road, Los Angeles, California."[3] *Id.*

The district court struck Plaintiff's verified claims. *Id.* at *4. The court held that Plaintiff lacked Article III standing for his claim to the two seized bank accounts because no evidence supported his claim to accounts that did not bear his name. *Id.* at 3. It further held that Plaintiff lacked standing to bring his claims for the real property because LLCs owned the properties, "[a]nd members of LLCs, like shareholders, do not have standing to bring claims simply by virtue of their membership in the LLC." *Id.* Further, the court held that any claim Plaintiff had to the proceeds of a sale of those properties made him, "at most, an unsecured creditor with no interest in the

---

[3] These parcels of real property were identified as "Defendant Real Property 2," "Defendant Real Property 6," and "Defendant Real Property 7" in the Government's complaint. *See* Complaint at 4-5, *United States v. Approximately $3,275.20 Seized from Bank of America Account No. XXXXXXXXXX*, No. 1:21-cv-20614-RNS (S.D. Fla. Feb. 12, 2021), ECF No. 1.

specific property." *Id.* Thus, the district court struck Plaintiff's claims, concluding he lacked Article III standing for his claims to the seized assets. *Id.* at *4.

Plaintiff subsequently moved for reconsideration. *United States v. Approximately $3,275.20 Seized from Bank of America Account No. XXXXXXXXXX*, No. 21-20614-Civ-Scola, 2022 WL 910665 (S.D. Fla. Mar. 29, 2022). Plaintiff based his motion for reconsideration on two mechanics' liens through which he asserted interests in two of three parcels of property mentioned in his verified claim. *Id.* at 2. "According to Guillermo, he was unable to produce the mechanic's liens by the time of the filing of his opposition to the Government's motion to strike — about five months before seeking reconsideration — for a myriad of reasons, all of which he says were beyond his control." *Id.* The court concluded that none of those circumstances justified reconsidering the court's order striking his claim, as "Guillermo fail[ed] to explain why he could not have raised the fact of the existence of the lien interest in his response nor why he did not bring the liens to the Court's attention during the intervening months between the time he received the recorded mechanic's lien back from the recorder's offer and the entry of the Court's order." *Id.* Plaintiff appealed the district court's denial of reconsideration, and his appeal is currently pending before the United States Court of Appeals for the Eleventh Circuit. *See United States v. Guillermo Montero*, No. 22-11166 (11th Cir. Apr. 11, 2022).

II. <u>Plaintiff's Complaint in This Court</u>

Shortly after filing his appeal with the Eleventh Circuit, Plaintiff filed the Complaint presently pending before this Court. *See* Compl. Plaintiff explained that he had previously filed a claim in Case No. 1:21-cv-20614-RNS at the United States District Court for the Southern District of Florida based on his mechanics liens on certain assets subject to forfeiture. *Id.* at 2. He alleges that "the Government is proceeding with the forfeiture action in total disregard of my 5th

4

Amendment Constitutional right to just compensation for my property." *Id.* Plaintiff contends "[t]his court has jurisdiction . . . because . . . the 5th Amendment to the Constitution states the government cannot take a private citizens [sic] property without just compensation." *Id.* at 1. He also contends this Court has jurisdiction pursuant to 28 U.S.C. § 1491(a)(1). *Id.*

## LEGAL STANDARD

This Court must dismiss claims outside its subject matter jurisdiction. *See* Rule 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The Tucker Act, which acts as a waiver of sovereign immunity, provides this Court with jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("[B]y giving the Court of Claims jurisdiction over specified types of claims against the United States, the Tucker Act constitutes a waiver of sovereign immunity with respect to those claims."). The Tucker Act is a jurisdictional statute and does not create any enforceable right against the United States on its own. *Mitchell*, 463 U.S. at 216; *United States v. Testan*, 424 U.S. 392, 398 (1976); *Todd v. United States*, 386 F.3d 1091, 1093-94 (Fed. Cir. 2004). For a claim to fall within this Court's "jurisdiction under the Tucker Act, a plaintiff must identify a money-mandating" source under federal law. *Bell v. United States*, 20 F.4th 768, 770 (Fed. Cir. 2021). Specifically, a plaintiff "must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government.'" *Mitchell*, 463 U.S. at 217 (quoting *Testan*, 424 U.S. at 400 (citation omitted)).

As with all other litigants, this Court must have jurisdiction over claims brought by *pro se* plaintiffs. *See Landreth*, 797 F. App'x 521, 523 (Fed. Cir. 2020) (per curiam); *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987); *Brewington v. United States*, No. 19-CV-611 C, 2020 WL 1818679, at *1 (Fed. Cl. Apr. 1, 2020), *aff'd*, No. 2020-1788, 2020 WL 6494841 (Fed. Cir. July 23, 2020). While this Court must liberally construe the filings of *pro se* plaintiffs, such plaintiffs still have the burden of establishing the Court's jurisdiction by a preponderance of the evidence. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Landreth*, 797 F. App'x at 523; *Curry v. United States*, 787 F. App'x 720, 722 (Fed. Cir. 2019) (per curiam).

## DISCUSSION

This Court lacks subject matter jurisdiction over Plaintiff's claims. While Fifth Amendment takings claims generally fall within this Court's jurisdiction, other provisions of federal law deprive this Court of jurisdiction over Plaintiff's Fifth Amendment claim. For the reasons discussed below, Plaintiff's claims must be dismissed for lack of subject matter jurisdiction.

I. <u>This Court Lacks Subject Matter Jurisdiction over Plaintiff's Civil Forfeiture Claims</u>

As noted, Plaintiff alleges an ownership interest in certain property subject to the Forfeiture Litigation. Compl. at 1. Plaintiff argues that Defendant, by seizing and subjecting his property to forfeiture, is taking his property in violation of the Fifth Amendment. *Id.* at 1-2. The Defendant initiated the Forfeiture Litigation pursuant to the Civil Asset Forfeiture Reform Act of 2000 (CAFRA). *See* Complaint, *Approximately $3,275.20*, No. 1:21-cv-20614-RNS; 18 U.S.C. §§ 983, 985. CAFRA expressly provides a process through which a party may assert an ownership interest in seized property. *See* 18 U.S.C. § 983(a)(4). As discussed further below, the existence of

6

CAFRA's remedial process, which enables individuals to enforce their property interests against the federal government, deprives this Court of subject matter jurisdiction over Plaintiff's claims. The arguments and authorities Plaintiff raises do not dispute that conclusion.

        A.  <u>CAFRA's Remedial Framework Deprives this Court of Subject Matter Jurisdiction</u>

The Tucker Act waives sovereign immunity and manifests the United States' consent to be sued in this Court for certain claims, including claims "founded . . . upon the Constitution." 28 U.S.C. § 1491(a)(1); *see United States v. Navajo Nation*, 556 U.S. 287, 290 (2009) (Tucker Act is "simply [a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.*, statutes or contracts)."). However, "statutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act." *United States v. Bormes*, 568 U.S. 6, 13 (2012). Put differently, if a statute sets out its own process for obtaining relief against the United States, that process preempts this Court's jurisdiction.

CAFRA is one such scheme that provides its own remedial framework. CAFRA requires that a person with an ownership interest in seized property "file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims." 18 U.S.C. § 983(a)(4)(A). The Supplemental Rules specify an individual must file a claim for property "in the court where the action is pending." Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(5). If an individual has an interest in property subject to forfeiture, CAFRA provides its own recourse: the individual must file a claim in the *district court* presiding over the forfeiture proceeding.

Because CAFRA provides its own remedial framework, this Court does not have subject matter jurisdiction to entertain Plaintiff's Complaint.  "Congress has vested the authority to resolve contested asset forfeitures in federal district courts and not the Court of Federal Claims." *Podlucky v. United States*, No. 2101686C, 2021 WL 6058874, at *7 (Fed. Cl. Dec. 22, 2021).  "As the U.S. Court of Appeals for the Federal Circuit has clearly stated, this Court does not have jurisdiction over a Fifth Amendment taking claim based on the federal government's *in rem* forfeiture of property when the plaintiff could have participated in the proceedings." *Hammitt v. United States*, 69 Fed. Cl. 165, 168 (2005) (dismissing for lack of subject matter jurisdiction in similar case); *see also Vereda, Ltda. v. United States*, 271 F.3d 1367, 1374-75 (Fed. Cir. 2001) ("The Court of Federal Claims lacks jurisdiction . . . because the relevant statutes provide for a comprehensive administrative and judicial system to review the *in rem* administrative forfeiture of property seized[.]"); *Upshaw v. United States*, 673 F. App'x 985, 987 (Fed. Cir. 2016) ("[T]he comprehensive remedial regime of [18 U.S.C. § 983] commits the claim of violation to district courts, to the exclusion of the Court of Federal Claims.").

Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's claim that the federal government's initiation of an *in rem* forfeiture proceeding constitutes a compensable taking.  If Plaintiff believes the government's forfeiture action took his property without just compensation, his only recourse is to file a claim in the district court overseeing the forfeiture proceeding, in accordance with 18 U.S.C. § 983.  Having done so unsuccessfully, *see* 2022 WL 19328, at *1-2,  Plaintiff cannot resort to this Court for a do-over.

B. <u>Plaintiff's Arguments Are Unavailing</u>

Plaintiff cites several cases in support of his argument that this Court has jurisdiction.  The cited cases, however, are inapposite and do not  circumvent the United States Court of Appeals for

the Federal Circuit's (Federal Circuit's) clear direction that this Court lacks subject matter jurisdiction over asset forfeiture proceedings.

Plaintiff first argues this Court has jurisdiction "per *Armstrong v. United States* ("ARMSTRONG"), 364 U.S. 40, 48 (1960) and its progeny." Opp. at 1. Plaintiff states that "[t]he United States Supreme Court held in *Armstrong* . . . that the taking of and destruction of the materialmen's mechanic's liens was a taking of 'those liens for which just compensation is due under the 5th amendment.'" *Id.*

While *Armstrong* held "there was a taking of . . . liens for which just compensation is due under the Fifth Amendment," the case is not relevant to the present action for several reasons. 364 U.S. at 48. *First*, the facts differ materially from those of the present case. The lienholder in *Armstrong* possessed liens on materials that were transferred to the federal government. *Id.* at 41-42. The Supreme Court concluded the liens were "taken" under the Fifth Amendment because "the sovereign immunity of the Government and its property from suit" prevented enforcement of the liens. *Id.* at 46. Unlike the *Armstrong* lienholder, Plaintiff *can* and indeed *did* try to enforce his liens against the federal government. *See Approximately $3,275.20*, 2022 WL 19328. Plaintiff's enforcement of his liens was not barred by sovereign immunity; indeed, CAFRA expressly permits filing claims for property seized by the federal government. *See* 18 U.S.C. § 983(a)(4)(A). That the district court struck Plaintiff's claim to the forfeited property is irrelevant to the present legal analysis. *See Approximately $3,275.20*, 2022 WL 19328, at *4. The mere fact that Plaintiff had the ability to enforce his liens through the process set out in CAFRA distinguishes his situation from *Armstrong*.

*Second*, and more fundamentally, asset forfeiture cannot be the basis of a Fifth Amendment takings claim. "The federal government's powers of forfeiture and eminent domain are distinct."

*Hammitt*, 69 Fed. Cl. at 169.  The forfeiture power is a punitive power designed to sanction lawbreaking, while eminent domain permits the government to make public improvements while compensating the affected property owners.  *Id.*  "The distinction between eminent domain and forfeiture has led this Court to hold numerous times that if the government properly effectuates a forfeiture *in rem*, a compensable Fifth Amendment taking has not occurred."  *Id.* at 170; *see also Perry v. United States*, 28 Fed. Cl. 82, 84-85 (1993); *Eversleigh v. United States*, 24 Cl. Ct. 357, 359 (1991).  *Armstrong*, which involved an incidental taking after the federal government obtained title to private property, did not involve an *in rem* forfeiture proceeding and therefore has little applicability to this case.

The other cases Plaintiff cites are likewise inapposite.  *Louisville Joint Stock Land Bank v. Radford* merely held a federal statute that disturbed a mortgagee's interest in property worked a compensable taking.  295 U.S. 555, 601-02 (1935); *see* Opp. at 2-3.  *Murray v. United States*, like *Armstrong*, held that government action destroying a mortgage lien could form the basis of a Fifth Amendment taking claim.  *Murray v. United States*, 817 F.2d 1580, 1582-84 (Fed. Cir. 1987) ("We see no difference, for Fifth Amendment purposes, between the Murrays' mortgage lien and the materialmen's liens at issue in *Armstrong*."); *see* Opp. at 3.  These cases simply stand for the proposition that destruction of liens or mortgages *may* form the basis of Fifth Amendment takings claims in some circumstances.  However, these cases do not suggest the lawful seizure of property via *in rem* asset forfeiture proceedings can support a taking claim.  *See, e.g.*, Reply at 3-4; *Hammitt*, 69 Fed. Cl. at 169-70 ("[A]n *in rem* forfeiture cannot also be a Fifth Amendment taking.").

Plaintiff finally cites *Shelden v. United States*, 19 Cl. Ct. 247 (1990), in which "the Claims Court awarded compensation under the Fifth Amendment to an innocent mortgagee."  Opp. at 7.  Plaintiff's reliance on Shelden is misplaced.  The underlying action at issue in *Shelden* was an *in*

10

*personam* forfeiture proceeding, and the *Shelden* plaintiffs were third parties to that proceeding. *Shelden*, 19 Cl. Ct. at 248-49. As the Federal Circuit explained when analyzing *Shelden* in another case, "although [the Sheldens] maintained an interest in the property [subject to the *in personam* proceeding], there was no procedure by which they, as third parties, could intervene in the forfeiture proceedings." *Vereda*, 271 F.3d at 1376. In other words, there was no remedial process on which the Sheldens could rely to assert their ownership interest; their only recourse was through this Court. In contrast, CAFRA provides Plaintiff a process to assert his claim in property subject to forfeiture proceedings. *See* 18 U.S.C. § 983(a)(4)(A). *Shelden* does not support Plaintiff's argument that this Court has subject matter jurisdiction over an *in rem* asset forfeiture proceeding under CAFRA.

In summary, CAFRA's remedial framework deprives this Court of subject matter jurisdiction over Plaintiff's claims. The cases Plaintiff uses to argue otherwise are factually distinguishable from this case and do not inform the threshold jurisdictional question.

II.     This Court Lacks Jurisdiction over Plaintiff's Claims Pending in Another Court

This Court also lacks subject matter jurisdiction over Plaintiff's claims because 28 U.S.C. § 1500 expressly bars this Court from considering it here. According to section 1500, "[t]he United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States." 28 U.S.C. § 1500. The analysis under section 1500 is a two-part inquiry. *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013). The court must first decide "whether there is an earlier-filed 'suit or process' pending in another court." *Id.* If there is, the court must then analyze "whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s)

asserted in the later-filed Court of Federal Claims action." *Id.* If so, this Court lacks jurisdiction under section 1500. *Id.*

        A. <u>Plaintiff Had a Pending Suit or Process Under 28 U.S.C. § 1500</u>

Whether another suit or process is pending in another court "is determined at the time the complaint is filed with the Court of Federal Claims." *Brandt*, 710 F.3d at 1375. Plaintiff filed his Complaint on April 29, 2022. *See* Compl. As of that date, Plaintiff's claim filed in the Forfeiture Litigation had been stricken by the district court. *See Approximately $3,275.20*, 2022 WL 19328, at *4. However, Plaintiff filed a notice of appeal to the Eleventh Circuit on April 8, 2022; that appeal was docketed by the Eleventh Circuit on April 11, 2022. *See United States v. Approximately $3,275.20 Seized from Bank of America Account No. XXXXXXXXXX*, No. 1:21-cv-20614-RNS (S.D. Fla. Feb. 12, 2021), ECF No. 183; *see also U.S. v. Guillermo Montero, et al.*, No. 22-11166 (11th Cir.). The Federal Circuit has confirmed "a claim is pending when a notice of appeal is filed and docketed." *Brandt*, 710 F.3d at 1378. Plaintiff's appeal to the Eleventh Circuit was therefore "pending" at the time Plaintiff filed his Complaint in this Court. *See, e.g.*, *Hood v. United States*, 659 F. App'x 655, 660-61 (Fed. Cir. 2016) (plaintiff's appeal to the Sixth Circuit was an earlier-filed pending suit or process); *Zainulabeddin v. United States*, 138 Fed. Cl. 492, 510-11 (2018) (plaintiff's consolidated appeals to the Eleventh Circuit were earlier-filed pending suits or processes); *Rohland v. United States*, 136 Fed. Cl. 55, 69 (2018) ("The filing of a notice of appeal makes a claim pending because a new case is then opened on the appellate court's docket."). Accordingly, when Plaintiff filed his Complaint on April 29, 2022, his appeal to the Eleventh Circuit was a suit or process pending in another court under 28 U.S.C. § 1500.

Defendant cites *Nycal Offshore Development Corp. v. United States*, 148 Fed. Cl. 1 (2020) in support of his contention that 28 U.S.C. § 1500 is inapplicable here. Opp. at 4. In *Nycal*, the

12

district court denied plaintiff's motion to intervene. *Nycal*, 148 Fed. Cl. at 6. Plaintiff subsequently appealed the district court's denial and, while the appeal was pending, filed suit in the United States Court of Federal Claims. *Id.* at 6-7. The court nonetheless held it had subject matter jurisdiction, concluding that when a party moves to intervene, it is merely a "prospective intervenor" that never entered the suit or process. *Id.* at 17-18. "[A] prospective intervenor does not have a 'suit' until a court grants its motion to intervene." *Id.* at 17. In contrast, Plaintiff had a suit or process the moment he filed a claim in the Southern District of Florida. *See* Fed. R. Civ. P. Supp. R. G(5)(a)(i) ("A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending."), G(5)(b) (requiring the claimant to "serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim," without requiring the court to first grant leave for the claimant to join the case). *Nycal* does not undermine the conclusion that, under 28 U.S.C. § 1500, Plaintiff had a suit or process pending in another court when he filed this action.

> B. <u>Plaintiff's Claims in His Complaint Are 'for or in Respect to' the Claims in His Pending Eleventh Circuit Appeal</u>

Having determined Plaintiff had a pending suit or process — the appeal to the Eleventh Circuit — when he filed his Complaint in this Court, the inquiry turns to whether the claims in that pending suit or process are "for or in respect to" the same claims asserted in the Complaint. Two suits are "for or in respect to" the same claim(s) when they are "based on substantially the same operative facts." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 317 (2011). The Federal Circuit has offered two tests to determine whether claims are based on substantially the same operative facts. *See Acetris Health, LLC v. United States*, 949 F.3d 719, 729 (Fed. Cir. 2020). The "act or contract test" examines whether two claims "arise out of one and the same act or contract," while the "evidence test" examines whether "the same evidence support[s] and

13

establish[es] both the present and the former cause of action." *Id.* (quoting *Tohono*, 563 U.S. at 316). According to the Federal Circuit, claims need only meet one of the two tests for the claims to be considered "based on substantially the same operative facts." *Id.*

Plaintiff's Complaint meets both tests. The "complained-of government acts that give rise to the claims in the two cases" are identical: the government seizing Plaintiff's property and subjecting the property to forfeiture. *Beberman v. United States*, 755 F. App'x 973, 979 (Fed. Cir. 2018); *see* Compl.; Notice of Appeal, *United States v. Guillermo Montero*, No. 22-11166 (11th Cir. Apr. 11, 2022). In his Complaint, Plaintiff alleges the government took his property "in case number 1:21-cv-20614RNS," and that he is entitled to compensation under the Fifth Amendment. Compl. at 1. He specifically pleaded a property interest in "Defendant Assets 2, 6, and 7" involved in that case. *Id.* at 2. Plaintiff's appeal to the Eleventh Circuit encompasses the same property and alleged takings. There, he is arguing for the reversal of a district court decision striking his claim to "a valid mechanics lien amongst other indicia of ownership and a colorable interest in three (3) Defendant Real Property Assets (2, 6, and 7)." Appellant's Response to Jurisdictional Question at 2-3, *United States v. Guillermo Montero*, No. 22-11166 (11th Cir. May 20, 2022). Under the "act or contract test," both claims arise from the government initiating forfeiture proceedings on property to which Plaintiff claims an ownership interest. *See Trusted Integration, Inc. v. U.S.*, 659 F.3d 1159, 1165 (Fed. Cir. 2011) (concluding claims were based on same operative facts when "it is apparent that each count involves nearly identical conduct").

Additionally, under the "evidence test," the same facts and evidence must be used in both cases to establish Plaintiff's ownership interest in the property. As discussed, Plaintiff alleged in his Eleventh Circuit appeal and before this Court that his injury stems from the government's seizure of Defendant Assets 2, 6, and 7 in the Forfeiture Litigation. *Compare* Appellant's

Response to Jurisdictional Question at 2-3, *United States v. Guillermo Montero*, No. 22-11166 (11th Cir. May 20, 2022), *with* Compl. at 1-2. Analyzing whether the government took Plaintiff's property will turn on whether Plaintiff does in fact have an ownership interest in Defendant Assets 2, 6, and 7; thus, "in both cases the evidence is likely to be the same." *Askan Holdings, Ltd. v. United States*, 155 Fed. Cl. 216, 225 (2021). "[I]t is the evidence underlying the claims" — here, Plaintiff's ownership interest in the seized property — "that forms the fulcrum of the analysis." *Id.*

Accordingly, as Plaintiff's pending appeal to the Eleventh Circuit is "based on substantially the same operative facts" as his Fifth Amendment takings cause of action alleged in his Complaint, this Court also lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1500.

III.    This Court Cannot Review District Court Decisions

This Court lacks subject matter jurisdiction for one final reason: it "does not have jurisdiction to review the decisions of district courts." *Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994); *see also Petro-Hunt, L.L.C. v. United States*, 862 F.3d 1370, 1384-86 (Fed. Cir. 2017); *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1352 (Fed. Cir. 2015) ("Binding precedent establishes that the Court of Federal Claims has no jurisdiction to review the merits of a decision rendered by a federal district court."). "This means that the Court of Federal Claims cannot entertain a taking claim that requires the court to 'scrutinize the actions of' another tribunal." *Vereda*, 271 F.3d at 1375 (quoting *Allustiarte v. United States*, 256 F.3d 1349, 1352 (Fed. Cir. 2001)).

Yet, that is precisely what Plaintiff asks this Court to do. In the Forfeiture Litigation before the district court, Plaintiff filed a claim to certain property. *See Approximately $3,275.20*, 2022 WL 19328, at *1. The district court struck Plaintiff's claims, concluding Plaintiff was "nothing

more than [an] unsecured creditor[]." *Id.* at *3. Thus, the district court determined that Plaintiff did not have a "legally cognizable interest in the property." *Id.* at *1 (quoting *United States v. 38,000 Dollars in U.S. Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987)).

Plaintiff now alleges before this Court that Defendant, by initiating the Forfeiture Litigation, took his property pursuant to the Takings Clause. Compl. at 1-2. Deciding the merits of Plaintiff's Complaint, however, would require this Court to "determine whether the claimant possessed a cognizable property interest in the subject of the alleged taking." *Adams v. United States*, 391 F.3d 1212, 1218 (Fed. Cir. 2004). The district court presiding over the Forfeiture Litigation already decided Plaintiff does not have an ownership interest in the property. *See Approximately $3,275.20*, 2022 WL 19328, at *3-4. Plaintiff is asking this Court to "scrutinize the actions" of, and effectively overrule, the district court. *Allustiarte*, 256 F.3d at 1352. This the Court cannot do. This Court "cannot consider [Plaintiff's] arguments as to the substantive decisions underlying the *in rem*…forfeiture." *Vereda*, 271 F.3d at 1375. Accordingly, this Court must dismiss Plaintiff's Complaint for this reason as well.

## CONCLUSION

For the reasons explained above, Defendant's Motion to Dismiss (ECF No. 8) is **GRANTED** pursuant to Rules 12(b)(1) and 12(h)(3), and Plaintiff's claims are **DISMISSED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

16